FILED

### IN THE CIRCUIT COURT OF GREENE COUNTY, ARKANSAS
2015 MAR -4  AM 11: 55

### CIVIL DIVISION

JAN GRIFFITH
GREENE CO. CIRCUIT CLERK

**ARKANSAS METHODIST HOSPITAL D/B/A**
**ARKANSAS METHODIST MEDICAL CENTER**                     **PLAINTIFF**

VS.                     CASE NO: _CV 2015 -47 (PH)_

**AIG PROPERTY CASUALTY COMPANY AND**
**NATIONAL UNION FIRE INSURANCE COMPANY OF**
**PITTSBURG**                                             **DEFENDANTS**

### COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the Plaintiff, Arkansas Methodist Hospital d/b/a/ Arkansas

Methodist Medical Center (hereinafter "AMMC") by and through its attorneys,

The Health Law Firm, and for the *Complaint for Declaratory Judgment* against

AIG Property Casualty Company (hereinafter referred to as "AIG") and National

Union Fire Insurance Company of Pittsburg (hereinafter referred to as

"National") states and alleges as follows:

#### I.
#### Parties and Jurisdiction

1. AMMC is a non-profit hospital doing business in Greene County, Arkansas

and has been so at all times relevant herein.

2. Defendant, AIG, is a foreign claims administrator authorized to do

business in the State of Arkansas. At all times relevant, AIG conducted business

in Greene County, Arkansas and is a named defendant pursuant to Ark. Code

Ann. §16-111-106. AIG has no registered agent for service of process filed

with the Arkansas Secretary of State, but lists its principal place of business as

175 Water Street, New York, NY 10038.

3. Defendant, National, is a foreign insurance corporation authorized to do business in the State of Arkansas. At all times relevant, National conducted business in Greene County, Arkansas and is a named defendant pursuant to Ark. Code Ann. §16-111-106. National has no registered agent for service of process filed with the Arkansas Secretary of State, but lists its principal place of business as 175 Water Street, New York, NY 10038.

4. All events alleged within this complaint occurred in and around Greene County, Arkansas.

5. Jurisdiction properly lies in this Court based upon the type and amount of relief sought, and this Court has jurisdiction over the parties and the subject matter of this action. Venue properly lies in this Court based on the location of the incident and the facts giving rise to this lawsuit per Ark. Code Ann. §16-60-104.

6. AMMC seeks a declaration of the rights and relations of the parties pursuant to a policy of insurance issued by National on or about March 23, 2013. Accordingly, jurisdiction and venue in this Court are proper. A copy of the policy and declarations page is attached hereto as Exhibit "A" and incorporated herein by reference. All confidential information has been redacted pursuant to Administrative Order No. 19.

7. AMMC qualifies as "interested parties" pursuant to Ark. Code Ann. §16-111-104 *et seq.* and maintains standing to bring this action, pursuant to Arkansas Rule of Civil Procedure 57, to obtain a determination and declaration

of the applicability and validity of the contract of insurance issued by National

in this case.

II.

## Factual Basis and Background

### *Liability Insurance Coverage*

8. At all times relevant herein, AMMC was covered by an Employment Practices

Liability Policy of insurance issued by National, Policy Number 01-828-29-44

(hereinafter referred to as "the Policy"). The Policy provides coverage for

liability arising from employment practices liability claims in the amount of

$2,000,000 for all loss for employment practices liability claims.

9. Section I of the policy affords employment practices liability coverage to

AMMC as follows:

> This policy shall pay the **Loss** of each and every **Insured** arising from a
> **Claim** first made against such Insured during the Policy Period or
> Discovery Period (if applicable) and reported to the Insurer pursuant to
> the terms of this policy for any Wrongful Act. The Insurer shall, in
> accordance with and subject to Clause 4 of this Coverage Section advance
> Defense Costs of such Claim prior to its final disposition.

### *Facts Establishing Coverage*

10. AMMC is an equal opportunity employer providing hospital services to

Paragould, Greene County, Arkansas and the surrounding areas.

11. In order to provide such services, AMMC periodically recruits physicians

to provide medical services to the community served by AMMC.

12. AMMC, on occasion, utilizes a recruiting firm to assist in identifying '

potential physician candidates.

13. On or about February 13, 2012, a recruiter submitted the Curriculum

Vitae (hereinafter referred to as "CV") of Dr. James Elbaor, a potential orthopedic surgeon candidate, to Mr. Gary Biggs, AMMC External Operations Manager.

14.    Dr. Elbaor was never interviewed for a position at AMMC although Mr. Biggs did speak with Dr. Elbaor by telephone.

15.    At the time Dr. Elbaor's CV was submitted for consideration, he was sixty-eight years of age.

16.    The open position was filled, on a temporary basis, by a physician who was seventy-two years of age.

17.    The permanent hire for the position was approximately forty-two years of age at the time of his hire.

18.    Dr. Elbaor was not considered for hire by AMMC due to a disciplinary action brought against him by the Texas State Board of Medical Examiners and due to a fine assessed on him by the State of New York which was disclosed at the time of the submission of his CV.

19.    On or about August 13, 2012, Dr. Elbaor, however, filed a charge (hereinafter referred to as "EEOC Charge") with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") alleging age discrimination.

20.    On or about May 8, 2013, the EEOC closed its file and issued a dismissal and notice of rights.

21.    While no findings were made against it, AMMC agreed to conduct training

on the Age Discrimination in Employment Act of 1967 (hereinafter referred to as "ADEA").

22.    Such agreement to conduct training did not constitute an admission by AMMC of any violation of the ADEA.

23.    On or about August 5, 2013, Dr. Elbaor filed Complaint No. 4:13cv0447JLH against AMMC in the Eastern District of Arkansas alleging violations of the ADEA and demanding damages.

24.    AMMC subsequently submitted the Complaint to National for coverage under the aforementioned Policy.

## Denial of Coverage by AIG

25.    Upon receipt of the Complaint, AMMC filed a timely claim with National under the Policy demanding coverage against the alleged employment practices liability, indemnification and coverage for defense pursuant to Section 4 of the policy.

26.    On or about December 19, 2013, AIG, as Claims Administrator for the Policy, denied AMMC's coverage (hereinafter referred to as the "Denial"). AIG based its denial of coverage under Section 7(a) of the General Terms and Conditions of the Policy as amended by Endorsement No. 9. Specifically, AIG determined that the claim was made prior to the inception date of the March 31, 2013 policy period. A copy of the correspondence from AIG denying coverage is attached hereto as Exhibit "B."

27.    On or about August 6, 2014, The Health Law Firm contacted AIG seeking

a reconsideration of their denial of coverage. A copy of the request for

reconsideration is attached hereto as Exhibit "C."

28. To date, neither AMMC nor The Health Law Firm have received a response

from AIG to its request for reconsideration.

### III.

### CLAIMS FOR RELIEF

*Count 1: For Declaratory Relief that Claim was Filed Untimely*

29. AMMC hereby incorporates paragraphs 1 through 28 herein by

reference.

30. At all times relevant, a policy of insurance issued to AMMC, Policy

Number 01-828-29-44 was in full force and effect. AMMC made inquiry and

claim against National pursuant to the Policy that was in force and effect at the

times relevant but National, by way of AIG as Claims Administrator, refused to

cover said losses.

31. AIG states that since the Claim was first made in August 2012, the Claim,

by way of the EEOC Charge, prior to the inception date of the March 31, 2013-

2014 policy period; therefore, no coverage is available.

32. Such claim by AIG is disingenuous at best since the Policy carries with it a

retroactive date of March 23, 1997 for Employment Practices liabilities. A copy

of the Coverage Summary is attached hereto and incorporated herein by

reference as Exhibit "D".

33. Further, even accepting the argument of the untimeliness of the filing, the

Claim referenced by AIG in its letter of denial is that of the EEOC Charge for which AMMC did not request coverage.

34.    Under the Policy, "Claim" is defined as follows:

(1) a written demand for monetary relief or non-monetary relief (including any request to toll or waive any statute of limitations); or

(2) a civil, administrative, regulatory or arbitration proceeding for monetary relief or non-monetary relief which is commenced by:
    (I)  service of a complaint or similar pleading; or
    (ii)   receipt or filing of notice of charges.

The term **Claim** shall include an Equal Employment Opportunity Commission ("EEOC") or Office of Federal Contract Compliance Program ("OFCC") (or similar federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, services of a complaint or similar document of which notice has been given to the Insured.

35.    Pursuant to the Policy's own definition, an EEOC Charge and a Complaint are separate claims and, as separate claims, each has its own notice requirement.

36.    Clause 7 of Endorsement #9 sets out the Notice/Claim Reporting provisions which requires that as a condition precedent to the obligations of the Insurer, the Insured (in this case, AMMC) shall "give written notice to the Insurer of any Claim made against an Insured..."

37.    A "condition precedent" as it relates to a contract is an event which must take place before a party to a contract must perform or do their part. Therefore, if the Insured does not wish to invoke the obligations of the Insurer, it would not provide the required notice.

38.    AIG's Denial makes it clear that the Notice of the EEOC Charge

would have been during a different policy period and would not have been sufficient for purposes of the separate Claim - triggered by the filing of the Complaint - and the Policy Period in question.

39.    The filing of the Complaint is an intervening event which carries with it, its own Notice requirements as set forth above.

40.    AMMC complied with the Notice requirements associated with the Complaint which is the only Claim for which AMMC is requesting coverage

41.    AMMC has made no claim for any losses associated with the EEOC Charge which, according to the Policy definition is a separate Claim and falls under a separate policy period as evidenced by AIG's Denial.

42.    Further, National was in no way prejudiced by its lack of notice of the EEOC Charge.

43.    The lack of such prejudice is evidenced by recent events.

44.    On or about December 7, 2014, Dr. Elbaor filed a second Notice of Charge of Discrimination related to the original EEOC Charge (hereinafter referred to as the "Second Charge").

45.    AMMC made inquiry and claim against National pursuant to the policy of insurance in effect at the time of the EEOC Charge and, while the deadline to respond to the EEOC regarding the Second Charge has passed, AMMC has received no response from National as to coverage on this issue.

46.    The Policy must be interpreted and construed in favor of AMMC and strictly against National. While the definition of "Claim" appears to include an EEOC charge, the definition of "Loss" creates an ambiguity in that it excludes

from coverage "civil or criminal fines or penalties." *See* Paragraph 2(f) of the Policy. The exclusionary term is susceptible to more than one reasonable interpretation, creating doubt and uncertainty as to the policy's meaning as to the coverage for any losses associated with findings related to an EEOC Charge as such loss would most likely have been a civil fine or penalty.

47.     This Court should interpret the terms and exclusions from the insurance coverage and resolve all reasonable doubts in favor of AMMC, who had no part in the preparation of the contract.

48.     AMMC seeks a declaration from this Court interpreting the language of the Policy to find that AMMC made a timely claim under the terms of the Policy.

*Count 2: For Declaratory Relief that the Allegations in the Underlying Amended Complaint are Covered under the Policy*

49.     AMMC realleges and incorporates by reference as if fully set forth herein the allegations contained in Paragraphs 1-48 above.

50.     As a basis for its denial, AIG cites the failure of AMMC to notify National of the initial EEOC Charge which AIG alleges was filed outside the applicable policy period.

51.     Arkansas courts have recognized that an insurer's duty to defend is broader than its duty to indemnify. The duty to defend arises when there is a possibility that the injury or damage may fall within the liability policy coverage.

52.     National nor AIG can deny coverage to AMMC as untimely based on the

Policy's retroactive date or failure to notify National of the Claim as timely notice of the Claim for which coverage is sought was made.

53. AMMC seeks a declaration from this Court finding that coverage applies and was in effect and applicable at all times relevant, interpreting the Policy language in favor of AMMC, and granting an order requiring National to indemnify and provide a defense to AMMC as the insured.

## IV.

### EXPEDITED HEARING OR TRIAL

54. The underlying Plaintiff filed his complaint against AMMC on August 5, 2013.

55. The trial setting for the underlying action is set for July 27, 2015.

56. Due to the immediate need for indemnification and to prepare a defense, AMMC seeks an expedited hearing and asks that the Court advance the matter on its docket pursuant to Ark. R. Civ. Pro 5.

## V.

### PRAYER FOR RELIEF

57. Expedited relief as set forth above.

58. A declaration from this Court finding that coverage was in effect and applicable on the date of the referenced occurrence, resolving any ambiguity within the terms of the policy in favor of the plaintiffs, and an order requiring the defendant to cover and indemnify the plaintiffs' losses proximately caused by the covered events stated herein and to provide a defense.

59. A twelve percent (12%) penalty pursuant to Ark. Code Ann. §23-79-

208(2013) for the defendant's wrongful declination of coverage.

60.   The plaintiff's costs and reasonable attorney's fee pursuant to Ark. Code Ann. §23-79-208(2013).

61.   Plaintiffs reserve the right to amend this pleading liberally as provided by the Arkansas Rules of Civil Procedure.

62.   The Plaintiffs waive a jury trial to facilitate an expedited hearing.

WHEREFORE, Plaintiffs request that they be granted the relief sought herein, for a declaratory judgment, an expedited hearing, their attorney's fees and costs plu any available penalties provided by Arkansas law and for any other just and proper relief to which they may be entitled.

> Respectfully submitted,
> THE HEALTH LAW FIRM
> *Attorney for Plaintiff*
> 2800 Cantrell Road, Suite 200
> Little Rock, Arkansas 72202
> (501) 221-7100 (Office)
> (501) 224-8787 (Fax)
> *kwgardner@healthlawfirm.com*

By:   Karey W Gardner

Karey W. Gardner
Arkansas Bar No. 96078

# CHARTIS

National Union Fire Insurance Company of Pittsburgh, Pa.
A capital stock company

Not-For-Profit Risk Protector℠

Employment Practices Liability

Coverage Section Two

("EPL Coverage Section")

**Notice.** Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this Coverage Section.

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application, including its attachments and the material incorporated therein, which form a part of this policy, the Insurer agrees as follows:

## 1. INSURING AGREEMENT

This policy shall pay the Loss of each and every Insured arising from a Claim first made against such Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any Wrongful Act. The Insurer shall, in accordance with and subject to Clause 4 of this Coverage Section advance Defense Costs of such Claim prior to its final disposition.

## 2. DEFINITIONS

(a) "Claim" means:

(1) a written demand for monetary relief or non-monetary relief (including any request to toll or waive any statute of limitations); or

(2) a civil, administrative, regulatory or arbitration proceeding for monetary relief or non-monetary relief which is commenced by:
   (i) service of a complaint or similar pleading; or
   (ii) receipt or filing of a notice of charges

The term Claim shall include an Equal Employment Opportunity Commission ("EEOC") or Office of Federal Contract Compliance Program ("OFCCP") (or similar federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured.

However, in no event shall the term Claim include any labor or grievance proceeding which is subject to a collective bargaining agreement.

(b) "Employee" means any past, present or future employee of the Organization, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary employee or volunteer of the Organization in his or her capacity as such. An individual who is leased to the Organization shall also be an Employee, but only if the Organization provides indemnification to such leased individual in the same manner as is provided to the Organization's employees. Any other individual who is contracted to perform work for the Organization, or who is an independent contractor for the Organization shall also be an Employee, but only if the Organization provides or is required to provide indemnification to such individual, in the same manner as that provided to the Organization's employees, pursuant to a written contract.

(c) "Employment Practices Violation" means any actual or alleged:

(1) wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2) harassment (including sexual harassment, whether "quid pro quo", hostile work environment or otherwise);

94210 (3/07)       1       © All rights reserved.

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

(3) discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(4) Retaliation,

(5) employment related misrepresentation(s) to an Employee or applicant for employment with the Organization,

(6) employment related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote,

(8) wrongful deprivation of career opportunity with the Organization, wrongful demotion or negligent Employee evaluation, including the giving of negative or defamatory statements in connection with an Employee reference.

(9) wrongful discipline,

(10) failure to grant tenure or practice privileges,

(11) failure to provide or enforce adequate or consistent Organization policies or procedures relating to any Employment Practices Violation, and

(12) violation of an individual's civil rights relating to any of the above.

but only if the Employment Practices Violation relates to an Individual Insured, or applicant for employment, with the Organization or an Outside Entity, whether direct, indirect, intentional or unintentional.

(d) "Individual Insured(s)" means a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the Organization), staff or faculty member (salaried or non-salaried), or Employee of the Organization, and an Outside Entity Executive. Coverage will automatically apply to all new persons who become Individual Insureds after the inception date of this policy.

(e) "Insured(s)" means the Organization and any Individual Insured

(f) "Loss" means damages (including front pay and back pay), judgments (including pre-judgment and post-judgment interest on that part of any covered judgment paid under this Coverage Section), settlements, statutory attorneys' fees and Defense Costs; however, Loss shall not include: (1) any amount for which the Insureds are not financially liable for which are without legal recourse to the Insureds; (2) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (3) civil or criminal fines or penalties; (4) taxes or tax penalties (whether imposed by federal, state, local or other governmental authority); (5) any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to a Claim; (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed. Defense Costs shall be provided for items specifically excluded from Loss pursuant to subparagraphs (1)-(6) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

Notwithstanding the foregoing paragraph, "Loss" shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to Exclusion (a) of this Coverage Section and Exclusion (a) of the General Terms and Conditions) punitive, exemplary and multiple damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages. For purposes of such coverage, "applicable law" includes, but is not limited to, the following jurisdictions: (a) where the Wrongful Act actually or allegedly took place; (b) where the damages

   © All rights reserved.

are awarded; (c) where the Named Organization resides, is incorporated or has its principal place of business, and (d) where the Insurer is incorporated or has its principal place of business.

(g) "Non-Employment Discrimination" means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs 2(c)(2) and 2(c)(3) of the definition of Employment Practices Violation, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an Individual Insured or applicant for employment with the Organization or an Outside Entity, including, but not limited to, students, patients, members, customers and suppliers.

(h) "Settlement Opportunity" means an Insurer recommended settlement that is within the Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability, if any, and that is acceptable to the claimant.

(i) "Wrongful Act(s)" means, (1) an Employment Practices Violation, or (2) Non-Employment Discrimination

## 3. EXCLUSIONS

In addition to the exclusions set forth in Clause 4 of the General Terms and Conditions, the Insurer shall not be liable to make any payment for Loss in connection with a Claim made against any Insured:

(a) arising out of, based upon or attributable to the committing of any criminal or deliberate fraudulent act if any final adjudication establishes that such criminal or deliberate fraudulent act was committed;

[The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusion.]

(b) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any Insured under any express contract or agreement; provided, however, this exclusion shall not apply to:

(i) the extent any liability does not arise under such express contract or agreement; or

(ii) Loss constituting Defense Costs for express, written employment contracts, or

(c) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Individual Insured serving in any capacity, other than as an Individual Insured of the Organization or as an Outside Entity Executive of an Outside Entity.

## 4. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Organization on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the General Terms and Conditions. Further, from the date the Claim is first made against the Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. The assumption of the defense of the Claim shall be effective upon written confirmation sent thereof by the Insurer to the Named Organization. Once the defense has been so tendered, the Insured shall have the right to fully and effectively associate with the Insurer in the defense and negotiation of

94210 (3/07)                                         3                          © All rights reserved.

any settlement of any Claim, subject to the provisions of this Clause 4. However, the Insurer shall not be obligated to defend such Claim after the Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability, if any, has been exhausted, or after an Insured's rejection of (or failure or refusal to accept within the prescribed time hereof) a Settlement Opportunity

When the Insurer has not assumed the defense of a Claim pursuant to this Clause 4, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Organization, severally according to their respective interests, in the event and to the extent that the Insureds or the Organization shall not be entitled under the terms and conditions of this policy to payment of such Loss

The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs, which have been consented to by the Insurer, in writing, shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 4, shall be entitled to fully and effectively associate in the defense and negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such loss is not covered under the terms of this policy.

The Insurer shall have the right to fully and effectively associate with the Organization in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Organization and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require

In the event the Insured(s) consent to a Settlement Opportunity within thirty (30) days of the date the Insureds are first made aware of the Settlement Opportunity (or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made), then the Organization's applicable Retention amount shall be retroactively reduced by ten percent (10%) for such Loss. It shall be a condition to such reduction that all Insureds must consent to such settlement.

However, if a Settlement Opportunity arises and the Insureds do not consent to the settlement within the time prescribed above, the Retention amount shall remain the applicable amount set forth in Item 3 of the Declarations even if consent is given to a subsequent Settlement Opportunity.

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed above, then, subject to the Policy Aggregate Limit of Liability and Separate Limit of Liability or Shared Limit of Liability, if any, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer ("Settlement Opportunity Amount"), plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Organization and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the applicable Retention amount stated in Item 3 of the Declarations.

5.  **PRE- AUTHORIZED DEFENSE ATTORNEYS**

    This Clause applies to all Claims under this Coverage Section. Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms (herein "Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of any Claim(s) against any Insured(s) pursuant to the terms set forth below.

94210 (3/07)                              4                    © All rights reserved.

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

In the event the Insurer has assumed the defense pursuant to Clause 4, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In the event the Insureds are already defending a Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the list of Panel Counsel Firms designated for the type of Claim and be from the jurisdiction in which the Claim is brought. In the event a Claim is brought in a jurisdiction not included on the appropriate list(s), the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Claim is maintained or where the corporate headquarters or state of formation of the Named Organization is located. In such instance, however, the Insurer shall, at the written request of the Named Organization, assign a non-Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Claim is brought to function as "local counsel" on the Claim to assist the Panel Counsel Firm, which will function as "lead counsel" in conducting the defense of the Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Organization.

G. **DISCOVERY CLAUSE**

Except as indicated below, if the Named Organization shall cancel or the Named Organization or the Insurer shall refuse to renew this Coverage Section, then solely with respect to this Coverage Section, the Named Organization shall have the right to a period of one, two, three, four, five or six years or of unlimited duration following the effective date of such cancellation or nonrenewal upon payment of the respective "Additional Premium Amount" described below (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during such Discovery Period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within thirty (30) days of the effective date of cancellation or nonrenewal.

The Additional Premium Amount for: (1) one year shall be 125% of the "full annual premium"; (2) two years shall be 175% of the "full annual premium"; (3) three years shall be 225% of the "full annual premium"; (4) four years shall be 250% of the "full annual premium"; (5) five years shall be 275% of the "full annual premium"; (6) six years shall be 300% of the "full annual premium"; and (7) a discovery period of unlimited duration shall be 325% of the "full annual premium". As used herein, "full annual premium" means the premium level in effect for this Coverage Section immediately prior to the end of the Policy Period.

In the event of a Transaction, as defined in Clause 9 of the General Terms and Conditions, the Named Organization shall have the right, within thirty (30) days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than six (6) years or for such longer or shorter period as the Named Organization may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

The Discovery Period is not cancelable, except for non-payment of premium. This clause and the rights contained herein shall not apply to any cancellation resulting from non- payment of premium.

94210 (3/07)                                  5                        © All rights reserved.

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5



[The balance of this page is left intentionally blank.]

94210 (3/07)

6

© All rights reserved.

A I G A T 0 8 3 / 2 0 / 2 0 1 5

# CHARTIS

National Union Fire Insurance Company of Pittsburgh, Pa.
A capital stock company

### Not-for-Profit Risk Protector™
### General Terms and Conditions
(Inapplicable to Kidnap and Ransom Coverage Section)

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application, including its attachments and the materials incorporated therein, which form a part of this policy, the Insurer agrees as follows:

## 1. TERMS AND CONDITIONS

These General Terms and Conditions are hereby incorporated by reference into, made a part of, and expressly made applicable to all Coverage Sections except (i) the Kidnap & Ransom Coverage Section; or (ii) where explicitly limited to one or more Coverage Sections. Any reference in this General Terms and Conditions Section to "all Coverage Sections" shall not refer to the Kidnap and Ransom Coverage Section. The terms and conditions set forth in each Coverage Section shall only apply to that particular Coverage Section and shall in no way be construed to apply to any other Coverage Section of this policy.

## 2. DEFINITIONS

(a) "Affiliate" shall mean any not-for-profit organization, other than a Subsidiary, which:

(1) the Named Organization or any Subsidiary controls or otherwise has the ability to direct the financial or managerial decisions of such entity, whether through the operation of law, contract or agreement, stock ownership or membership, charter, articles of incorporation, or by law provisions; or

(2) is granted by contract the right to control the financial or managerial decisions of the Named Organization or any Subsidiary;

provided, however, that such coverage as may be provided under this policy for any organization described in subparagraphs (1) and (2) above shall be limited solely to Wrongful Acts occurring in the course of the exercise of such control of financial or managerial decisions.

(b) "Bodily Injury" means physical injury, sickness or disease (other than emotional distress or mental anguish), including death resulting therefrom.

(c) "Claim" means a Claim, as that term is defined within each Coverage Section.

(d) "Continuity Date" means the date set forth in Item 3 of the Declarations with respect to each Coverage Section.

(e) "Coverage Section(s)" means each Coverage Section that is purchased by the Insured as indicated in Item 3 of the Declarations.

(f) "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding compensation of Individual Insureds. Defense Costs shall not include any fees, costs or expenses incurred prior to the time that a Claim is first made against an Insured.

(g) "Discovery Period" means the Discovery Period as that term is defined in each Coverage Section.

(h) "Domestic Partner" means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the Named Organization or any Subsidiary

(i) "Employee(s)" means an Employee as that term is defined within each Coverage Section.

(j) "Financial Insolvency" means: (1) entering into proceedings in bankruptcy; (2) becoming a debtor

94204 (3/07)                                            1                            © All rights reserved.

in possession, or (3) the taking of control, the supervision of or the managing or liquidation of the financial affairs of an entity by a receiver, conservator, liquidator, trustee, rehabilitator or similar official

(k) "Indemnifiable Loss" means Loss for which the Organization has indemnified or is permitted or required to indemnify any Individual Insureds.

(l) "Individual Insured(s)" means an Individual Insured, as that term is defined within each Coverage Section

(m) "Insurer" means the entity listed in Item B of the Declarations

(n) "Insured(s)" means an Insured, as that term is defined within each Coverage Section

(o) "Loss" means Loss, as that term is defined within each Coverage Section

(p) "Named Organization" means the Organization designated in Item 1 of the Declarations

(q) "Non-Indemnifiable Loss" means Loss for which an Organization has neither indemnified nor is permitted or required to indemnify an Individual Insured

(r) "Organization" means (1) the Named Organization, (2) any Subsidiary thereof, and (3) any Affiliate thereof listed by endorsement to this policy, but solely with respect to the Coverage Sections indicated on such endorsement

(s) "Outside Entity" means any not for profit organization under section 501(c) of the Internal Revenue Code of 1986 (as amended), other than a Subsidiary or listed Affiliate

(t) "Outside Entity Executive" means any director, trustee, trustee emeritus or governor (or equivalent position) of the Organization who is or was acting at the specific request or direction of the Organization as a director, trustee, trustee emeritus or governor of an Outside Entity It is understood and agreed that, in the event of a disagreement between the Organization and an individual as to whether such individual was acting "at the specific request or direction of the Organization," this policy shall abide by the determination of the Organization on this issue and such determination shall be made by written notice to the Insurer within ninety (90) days after the Claim is first reported to the Insurer pursuant to the terms of the policy In the event no determination is made within such period, this policy shall apply as if the Organization determined that such Individual Insured was not acting at the Organization's specific request or direction.

(u) "Plan" means Plan, as that term is defined within the III Coverage Section.

(v) "Policy Aggregate Limit of Liability" means the Policy Aggregate Limit of Liability stated in Item 7(a) of the Declarations.

(w) "Policy Period" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

(x) "Pollutants" means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and Waste. "Waste" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(y) "Property Damage" means damage to, or destruction of tangible or intangible property, including the loss of use thereof, or the loss of use of tangible or intangible property which has not been damaged or destroyed.

(z) "Related Wrongful Act" means a Wrongful Act which is the same, related or continuous, or Wrongful Act which arises from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action.

(aa) "Retaliation" means a retaliatory act of an Insured alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an Employee to a superior or to

              ◊ All rights reserved.

any governmental agency of any act by an Insured which is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder, (2) the actual or attempted exercise by an Employee of any right that such Employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle blower" law; or (4) Employee strikes.

(bb) "Separate Limit of Liability" means each Separate Limit of Liability, if any, stated in Item 3 of the Declarations.

(cc) "Shared Limit of Liability" means each Shared Limit of Liability, if any, stated in Item 3 of the Declarations, which limit of liability shall be shared between all of the Coverage Sections which are listed below such Shared Limit of Liability in the Declarations.

(dd) "Subsidiary" means:

With respect to all Coverage Sections (other than the Crime Coverage Section):

(i) any organization of which, on or before the inception date of the Policy Period, the Organization owns more than fifty percent (50%) of the voting interest, either directly, or indirectly through one or more of its Subsidiaries, or has, on or before the inception of the Policy Period, the right to elect or appoint more than fifty percent (50%) of the voting directors, or trustees, either directly or indirectly through one or more of its Subsidiaries;

(ii) automatically any not-for-profit organization which becomes a Subsidiary during the Policy Period and of which the book value of such entity's assets determined in accordance with Generally Accepted Accounting Principles ("GAAP") totals less than 30% of the similarly calculated assets of the Named Organization as of the inception date of the Policy Period; or

(iii) any for-profit organization which becomes a Subsidiary during the Policy Period and of which the book value of such entity's assets determined in accordance with "GAAP" totals less than 20% of the similarly calculated assets of the Named Organization as of the inception date of the Policy Period.

With regard to subparagraphs (ii) and (iii) above, the Named Organization shall provide the Insurer with full particulars of the Subsidiary before the end of the Policy Period.

Any organization which becomes a Subsidiary during the Policy Period, but which exceeds the asset limitations stated in subparagraphs (ii) or (iii) above, shall be provided coverage under this policy, but only upon the condition that within 90 days after the date of its becoming a Subsidiary, the Named Organization shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, the coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Organization paying when due any additional premium required by the Insurer relating to such new Subsidiary.

An organization becomes a Subsidiary when the Named Organization owns more than fifty percent (50%) of the voting interest, either directly, or indirectly through one or more of its Subsidiaries, or has, on or before the inception date of the Policy Period, the right to elect or appoint more than fifty percent (50%) of the voting directors, or trustees, either directly or indirectly through one or more of its Subsidiaries.

In all events, such coverage as is afforded under this policy with respect to a Claim made against any Subsidiary, or any Individual Insured of a Subsidiary, shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

(ee) "Wrongful Act" means a Wrongful Act, as that term is defined within each Coverage Section.

3. EXTENSIONS

                © All rights reserved.

Subject otherwise to the terms hereof this policy shall cover Loss arising from any Claims made against (i) the estates, heirs or legal representatives of deceased Individual Insureds, and the legal representatives of Individual Insureds in the event of an Individual Insured's incompetency, insolvency or bankruptcy, who were Individual Insureds at the time the Wrongful Acts upon which such Claims are based were committed, and (ii) the lawful spouse or Domestic Partner of an Individual Insured for all Claims arising solely out of his or her status as the spouse or Domestic Partner of an Individual Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse or Domestic Partner or property transferred from the Individual Insured to the spouse or Domestic Partner, provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse or Domestic Partner, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an Individual Insured, subject to the policy's terms, conditions and exclusions.

## 4. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured.

(a) arising out of, based upon or attributable to the gaining of any profit or advantage to which any final adjudication establishes the Insured was not legally entitled;

(b) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act alleged or contained in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(c) alleging, arising out of, based upon or attributable to, as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation; or the alleging of any Wrongful Act which is the same or a Related Wrongful Act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(d) alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly, Bodily Injury or Property Damage; provided, however, that with respect to the ITI Coverage Section only, this exclusion shall not apply to Defense Costs incurred in the defense of a Claim alleging a Breach of Fiduciary Duty;

(e) alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly:

   (1) the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants; or

   (2) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants.

including, but not limited to, a Claim alleging damage to the Organization or its members;

(f) for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state or local statutory law or common law; provided, however, that:

   (1) with respect to the EPL Coverage Section only, this exclusion shall not apply to (i) a Claim arising out of a violation of the Equal Pay Act, or (ii) Loss arising from a Claim for Retaliation; or

   (2) with respect to the FLI Coverage Section only, this exclusion shall not apply to a Claim arising out of a violation of Employee Benefit Law;

(g) alleging, arising out of, based upon, attributable to or in any way involving, directly or indirectly, the refusal, failure or inability of any Insured(s) to pay wages or overtime pay for services rendered (hereinafter, "Earned Wages") (as opposed to tort-based back pay or front pay

94204 (3/07)       4       © All rights reserved.

damages) or for improper payroll deductions, taken by any Insured(s) from any Employee(s) or purported Employee(s), including, but not limited to, (i) any unfair business practice claim alleged because of the failure to pay Earned Wages, or (ii) any Claim seeking Earned Wages because any Employee(s) or purported Employee(s) was improperly classified or mislabeled as "exempt";

(h) alleging, arising out of, based upon or attributable to any obligation pursuant to any workers' compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar benefits, provided, however, that this exclusion shall not apply

   (1) with respect to the EPL Coverage Section only, to Loss arising from a Claim for Retaliation; or

   (2) to the extent coverage is afforded pursuant to HI Coverage Section only;

For the purpose of determining the applicability of the Exclusions, 4(a), 4(d), 4(e), 4(f), 4(g) and 4(h) above: (1) the facts pertaining to and knowledge possessed by any Insured shall not be imputed to any other Individual Insured, and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer (or equivalent positions) of the Organization shall be imputed to the **Organization**

This Clause 4, **EXCLUSIONS** shall not be applicable to Crisis Management Loss (as such term is defined in the D&O Coverage Section)

5.  **LIMIT OF LIABILITY**

   (a) With respect to all Coverage Sections, other than the Crime Coverage, the following shall apply:

   **POLICY AGGREGATE LIMIT OF LIABILITY (FOR ALL LOSS UNDER THIS POLICY COMBINED) INCLUDING DEFENSE COSTS**

   The Policy Aggregate Limit of Liability stated in Item 7(a) of the Declarations is the maximum limit of the Insurer's liability for all Loss under all Coverage Sections combined, arising out of all Claims first made against the Insureds during the Policy Period or the Discovery Period (if applicable), however, the Policy Aggregate Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Policy Aggregate Limit of Liability for the Policy Period. Further, a Claim which is made subsequent to the Policy Period or Discovery Period (if applicable), which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period, shall also be subject to the Policy Aggregate Limit of Liability stated in Item 7(a) of the Declarations and subject to the applicable Separate Limit of Liability, if any.

   If Separate Limits of Liability are stated in Item 3 of the Declarations, then each such **Separate Limit of Liability** shall be the maximum limit of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period or the Discovery Period (if applicable) with respect to the applicable Coverage Section as stated on the Declarations; provided, however, the **Separate Limit of Liability** for the Discovery Period shall be part of, and not in addition to, the Separate Limit of Liability for the Policy Period. The Separate Limits of Liability shall be part of, and not in addition to the Policy Aggregate Limit of Liability for all Loss under this policy as stated in Item 7(a) of the Declarations and shall in no way serve to increase the Insurer's Limit of Liability as therein stated.

   If Shared Limits of Liability are stated in Item 3 of the Declarations, then each such **Shared Limit of Liability** shall be the maximum limit of the Insurer's liability for all Loss arising out of all Claims first made against the Insureds during the Policy Period or the Discovery Period (if applicable) with respect to all Coverage Sections for which such Shared Limit of Liability is applicable, as indicated on the Declarations; provided, however, with respect to all **Coverage Sections** that have a **Shared Limit of Liability**, the Shared Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Shared Limit of Liability for the Policy Period. Any Shared Limit of Liability shall be part of, and not in addition to, the Policy Aggregate Limit of Liability for all Loss under this policy as stated in Item 7(a) of the

---

94204 (3/07)                                  5                            ◆ All rights reserved.

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

Declarations, and shall in no way serve to increase the Policy Aggregate Limit of Liability as therein stated.

Defense Costs are not payable by the Insurer in addition to the Policy Aggregate Limit of Liability or any Separate Limit of Liability or Shared Limit of Liability. Defense Costs are part of Loss and as such are subject to the Policy Aggregate Limit of Liability for Loss and any applicable Separate Limit or Shared Limit of Liability. Amounts incurred for Defense Costs shall be applied against the Retention amount.

(b) Solely with respect to the Crime Coverage Section, the following shall apply:

The most the Insurer will pay for Loss in any one Occurrence, as defined within the Crime Coverage Section, is the applicable Per Occurrence Limit of Liability shown in Item 5 of the Declarations.

## 6.  RETENTION/DEDUCTIBLE CLAUSE

(a) With respect to all Coverage Sections other than the Crime Coverage Section, the following shall apply:

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention amount stated in Item 3 of the Declarations, such Retention amount to be borne by the Organization and/or the Insureds and shall remain uninsured, with regard to: (i) all Indemnifiable Loss; and (ii) Loss of the Organization. A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Acts. In the event a Claim triggers more than one amount stated in Item 3 of the Declarations, only the highest such amount shall apply, which amount shall apply to all Loss under such Claim.

Notwithstanding the foregoing, with respect to any Crisis Management Event (as defined in the D&O Coverage Section), the Insurer shall only be liable for the amount of Crisis Management Loss (as defined in the D&O Coverage Section) arising from a Crisis Management Event (as defined in the D&O Coverage Section) which is in excess of the applicable Retention stated in Item 3 of the Declarations, such Retention amount to be borne by the Organization and shall remain uninsured, with regard to all Crisis Management Loss (as defined in the D&O Coverage Section).

In the event an Organization refuses to pay an applicable Retention due to Financial Insolvency, then the Insurer shall commence advancing Loss within the Retention, subject to the other terms, conditions and exclusions of this policy, provided that (i) the Insurer shall be entitled to recover the amount of Loss advanced within the Retention from the Organization pursuant to Clause 10. SUBROGATION, of this General Terms and Conditions; and (ii) the Organization hereby agrees to indemnify the Insureds to the fullest extent permitted by law taking all steps necessary in furtherance thereto, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract. The Named Organization and all Subsidiaries and Affiliates will be conclusively deemed to have indemnified the Individual Insureds to the extent that the Organization is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the Organization.

(b) Solely with respect to the Crime Coverage Section, the following shall apply:

The Insurer will not pay for Loss in any one Occurrence, as defined within the Crime Coverage Section, unless the amount of loss exceeds the applicable Deductible Amount shown in Item 5 of the Declarations. The Insurer will then pay the amount of Loss in excess of the Deductible Amount, up to the applicable Per Occurrence Limit of Liability. In the event more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount may be applied.

## 7.  NOTICE/CLAIM REPORTING PROVISIONS

**Notice** hereunder shall be given in writing to Chartis, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 to the attention of "c Claim Department." Notice shall include and reference this policy number as indicated in the Declarations, as well as the Coverage Section(s) under which the Claim is being noticed If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

1. With respect to all Coverage Sections, other than the Crime Coverage Section the following shall apply.

(2) (a) The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured or any Crisis Management Event (as defined in the D&O Coverage Section) as soon as practicable and either:

   (1) anytime during the Policy Period or during the Discovery Period (if applicable), or

   (2) within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured

  (b) If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or is a Related Wrongful Act to that alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

  (c) If during the Policy Period or during the Discovery Period (if applicable) the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or is a Related Wrongful Act to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

2. Solely with respect to the Crime Coverage Section, the following shall apply:

  (a) Duties in The Event of Loss:

   After any Insured discovers a loss or a situation that may result in loss of or damages to Money, Securities or Other Property, the Insured must:

   (1) Notify the Insurer as soon as possible, but no later than 60 days after discovery of a loss or a situation that may result in loss of or damages to Money, Securities or Other Property. If the Insured has reason to believe that any loss (except for loss covered under Insuring Agreements A or B of the Crime Coverage Section) involves a violation of law, the Insured must also notify the local law enforcement authorities

   (2) Submit to an examination under oath at the Insurer's request and provide the Insurer with a signed statement of the Insured's answers.

   (3) Give the Insurer a detailed, sworn proof of loss within 120 days of the discovery of a loss or a situation that may result in loss of or damages to Money, Securities or Other Property, provided, however, that such proof of loss shall not be required solely in the event the Insured elects to have an independent Investigative Specialist investigate the facts and determine the quantum of loss pursuant to Clause 4.A.4 of the Crime Coverage Section and such report is issued pursuant to the terms and conditions of that Clause.

   (4) Cooperate with the Insurer in the investigation and settlement of any loss.

## 8. CANCELLATION CLAUSE

94204 (3/07)       7       © All rights reserved.

A
I
G

A
T
O
8

3
/
2
0
/
2
0
1
5

This policy may be canceled by the Named Organization at any time only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent. If this policy is canceled by the Named Organization, the Insurer shall retain the customary short rate proportion of the premium herein.

This policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Organization. In the event of nonpayment of premium by the Named Organization, the Insurer may cancel this policy by delivering to the Named Organization or by mailing to the Named Organization, by registered, certified or other first class mail, at the Named Organization's address as shown in Item 1 of the Declarations, written notice stating when, not less than thirty (30) days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender. The Insurer shall have the right to the premium amount for the portion of the Policy Period during which the policy was in effect.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

9. **CHANGE IN CONTROL OF NAMED ORGANIZATION**

With respect to all Coverage Sections, other than the Crime Coverage Section, the following shall apply:

If during the Policy Period:

a. the Named Organization shall consolidate with or merge into, or sell all or substantially all of its assets to, any other person or entity, or group of persons or entities acting in concert;

b. any person or entity, or group of persons or entities, acting in concert shall acquire an amount of the voting interest representing more than fifty percent (50%) of the voting power for the election or appointment of directors, trustees or members of the board of managers of the Named Organization, or acquires the voting rights of such an amount of such interest; or

c. the Named Organization shall change from not-for-profit to for-profit status,

(any of the above events herein referred to as the "Transaction")

then this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Named Organization shall also have the right to an offer by the Insurer of a Discovery Period described in the Clause in each applicable Coverage Section entitled "Discovery Clause."

The Named Organization shall give the Insurer written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

10. **SUBROGATION**

With respect to all Coverage Sections, other than the Crime Coverage Section, the following paragraph shall apply:

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Insureds' rights of recovery thereof, and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer to effectively bring suit in the name of any Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Individual Insured under this policy unless such Individual Insured has been convicted of a criminal act, or been determined by a final adjudication to have committed a dishonest or fraudulent act or to have obtained any profit or advantage to which such Individual Insured was not legally entitled.

© All rights reserved.

Solely with respect to the ELI Coverage Section, in the event the policy has been purchased by an Insured other than a Plan, the Insurer shall have no right of recourse against an Insured. Notwithstanding the foregoing, the Insurer shall have a right of recourse against an Insured arising out of a Claim by an Insured against another Insured unless such Claim is instigated and continued totally independent of, and totally without the solicitation of, assistance of or active participation by the Insured claimed against.

## 11. OTHER INSURANCE AND INDEMNIFICATION

Solely with respect to the EPL Coverage Section, unless expressly written to be excess over other applicable insurance, it is intended that the insurance provided by the EPL Coverage Section shall be primary.

With respect to all Coverage Sections other than the EPL Coverage Section, such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Policy Aggregate Limit of Liability provided by this policy. This policy shall be specifically excess of any other policy pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

In the event of a Claim against an Insured arising out of his or her service as an Outside Entity Executive, or a Claim against an Insured for the Insured's liability with respect to a leased Employee as described in the definition of "Employee" in the D&O Coverage Section or the EPL Coverage Section, as applicable, coverage as is afforded by the D&O Coverage Section and the EPL Coverage Section shall be specifically excess of indemnification provided by such Outside Entity or such leasing company and any insurance provided to such Outside Entity or such leasing company.

Further, in the event other insurance is provided to an Outside Entity or leasing company referenced in the above paragraph, or is provided under any pension trust or employee benefit plan fiduciary liability insurance policy, and such other insurance is provided by the Insurer or any member company of Chartis Inc. (Chartis) (or would be provided but for the application of the retention amount, exhaustion of the Limit of Liability or failure to submit a notice of a Claim), then the Insurer's maximum aggregate Limit of Liability for all Loss combined in connection with a Claim covered, in part or in whole, by this policy and such other insurance policy issued by Chartis, shall not exceed the greater of the Policy Aggregate Limit of Liability or any applicable Separate Limit of Liability or applicable Shared Limit of Liability of this policy or the limit of liability of such other Chartis insurance policy.

## 12. NOTICE AND AUTHORITY

It is agreed that the Named Organization shall act on behalf of the Subsidiaries and all Insureds with respect to the giving of notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining to tender the defense of a Claim to the Insurer and the exercising or declining of any right to a Discovery Period.

## 13. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer, which shall be in the sole and absolute discretion of the Insurer.

## 14. ACTION AGAINST INSURER

With respect to all Coverage Sections, other than the Crime Coverage, the following shall apply:

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or

94204 (3/07)                                        9                                        © All rights reserved.

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or their legal representatives. Bankruptcy or insolvency of the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 15. REPRESENTATIONS AND SEVERABILITY

Solely with respect to the D&O Coverage Section and the EPL Coverage Section, the following shall apply:

In granting coverage under this policy, it is agreed that the Insurer has relied upon the statements, warranties and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements, warranties and representations are the basis for this policy, are material to the risk assumed by the Insurer and are to be considered as incorporated into this policy.

The Insureds agree that in the event that such statements, warranties and representations are not accurate and complete, then the coverage provided by this policy shall be deemed void *ab initio* solely with respect to any of the following Insureds:

(1) solely with respect to Loss other than Non-Indemnifiable Loss, any Individual Insured who knew as of the inception date of the Policy Period the facts that were not accurately and completely disclosed in the application;

(2) with respect to the D&O Coverage Section only, any Organization, under Clause 1, Insuring Agreements, COVERAGE B, to the extent it indemnifies any Individual Insured referenced in subparagraph (1) above;

(3) with respect to the D&O Coverage Section only, any Organization, under Clause 1, Insuring Agreement, COVERAGE C, if any past or present chief executive officer, chief operating officer or chief financial officer (or any equivalent position) of an Organization knew, as of the inception date of the Policy Period, the facts that were not accurately and completely disclosed in the application;

(4) with respect to the EPL Coverage Section only, any Organization, to the extent it indemnifies any Individual Insured referenced in subparagraph (1) above; and

(5) with respect to the EPL Coverage Section only, any Organization, if any past or present chief executive officer, chief operating officer, chief financial officer or director of human resources (or any equivalent position) of an Organization knew, as of the inception date of the Policy Period, the facts that were not accurately and completely disclosed in the application,

whether or not such Individual Insured knew that such facts were not accurately and completely disclosed in the application.

Except as provided in (1) through (5) above, no Individual Insured's knowledge shall be imputed to any other Insured.

Solely with respect to any Non-Indemnifiable Loss of any Individual Insured, under no circumstances shall the coverage provided by this policy be deemed void, whether by rescission or otherwise, but such coverage will be subject to all other terms, conditions and exclusions of the policy.

## 16. TERRITORY

(a) With respect to all Coverage Sections, other than the Crime Coverage Section, the following shall apply:

WORLDWIDE TERRITORY

Where legally permissible, this policy shall apply to any Claim made against any Insured

　　　　　◊ All rights reserved.

anywhere in the world, with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

(b) Solely with respect to the Crime Coverage Section, the following shall apply:

**TERRITORY**

This policy covers acts committed or events occurring within the United States of America (including its territories and possessions) and Puerto Rico.

## 17. HEADINGS

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

94204 (3/07)                                11                        © All rights reserved.

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

# CHARTIS

### National Union Fire Insurance Company of Pittsburgh, Pa."
#### A capital stock company

# Not-For-Profit Risk Protector"

### Management Liability, Professional Liability, Crime Coverage and Kidnap And Ransom/Extortion Coverage for Not-For-Profit Organizations

POLICY NUMBER: *01 828-29 44*          REPLACEMENT OF POLICY NUMBER: *01 682 54 40*

---

**NOTICES**

[APPLICABLE TO ALL COVERAGE SECTIONS OTHER THAN THE CRIME COVERAGE SECTION AND KIDNAP AND RANSOM/EXTORTION COVERAGE SECTION]

COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER AS THE POLICY REQUIRES.   DEFENSE COSTS REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE, AMOUNTS AVAILABLE TO RESPOND TO SETTLEMENTS AND JUDGMENTS) AND ARE APPLIED AGAINST APPLICABLE RETENTIONS.

THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION. WHERE THE INSURER HAS NO DUTY TO DEFEND, IT WILL ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS OF THIS POLICY PRIOR TO THE FINAL DISPOSITION OF A CLAIM. PLEASE REFER TO THE COVERAGE SECTIONS PURCHASED FOR DEFENSE RELATED DETAILS.

PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

---

## DECLARATIONS

| ITEMS | | |
|---|---|---|
| **NAMED ORGANIZATION:** | (the "Named Organization") | ARKANSAS METHODIST HOSPITAL CORP. *D/B/A ARKANSAS METHODIST MEDICAL CENTER* |
| | MAILING ADDRESS | *900 W KINGSHIGHWAY P.O. BOX 339 PARAGOULD, AR 72450-5942* |
| | STATE OF INCORPORATION/FORMATION: | *Arkansas* |
| **POLICY PERIOD:** | Inception Date: *March 23, 2013* | Expiration Date: *March 23, 2014* |
| | 12:01 A.M. at the address stated in Item 1 | |

*1051392*

94106 (2/07)                    1                    ◊ All rights reserved.

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

ITEMS (continued)

## COVERAGE SUMMARY

| | Liability Coverage Section | Separate Limit of Liability | Shared Limit of Liability | Retention/ Deductible* | Continuity Date | Premium |
|---|---|---|---|---|---|---|
| D&O | D&O and Not-For-Profit Organization | $2,000,000 | Inapplicable | Crisis Management Events $2,500 All Other Claims: $25,000 | 03/23/1993 | $4,761 |
| EPL | Employment Practices | $2,000,000 | Inapplicable | All Claims: $75,000 | 03/23/1997 | $10,019 |
| FLI | Fiduciary | $2,000,000 | Inapplicable | All Claims $10,000 | 03/23/1993 | $2,294 |
| CCP | Employed Lawyers | Coverage Section Not Purchased | Coverage Section Not Purchased | All Claims: Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Crime | Crime | See Section 5: | None | See Section 5: | N/A | Coverage Section Not Purchased |
| KRE | Kidnap And Ransom/ Extortion | See Section 6: | None | See Section 6: | N/A | Coverage Section Not Purchased |
| *With respect to the D&O, EPL, FLI and CCP Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss *No Retention is applicable to Voluntary Compliance Loss and HIPAA Penalties | | | | | | N/A |

**TOTAL PREMIUM**
$17,074

Premium for Certified Acts of Terrorism Coverage under Terrorism
Risk Insurance Act 2002: $85 included in policy premium.
Any coverage provided for losses caused by an act of terrorism as
defined by TRIA (TRIA Losses) may be partially reimbursed by the
United States under a formula established by TRIA as follows:  85% of
TRIA Losses in excess of the insurer deductible mandated by TRIA, the
deductible to be based on a percentage of the insurer's direct earned
premiums for the year preceding the act of terrorism.
    A copy of the TRIA disclosure sent with the original quote is
attached hereto.

1051392

94106 (2/07)                                    2                          © All rights reserved.

## ITEMS (continued)

### CRIME LIMITS OF LIABILITY AND DEDUCTIBLES

| Insuring Agreement | Per Occurrence Limit of Liability | Deductible |
|---|---|---|
| Insuring Agreement 1.A.: "Employee Theft" Loss | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Insuring Agreement 1.B.: "Forgery or Alteration" Loss | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Insuring Agreement 1.C.: "Inside the Premises — Theft of Money or Securities" Loss | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Insuring Agreement 1.D.: "Inside the Premises — Robbery or Safe Burglary of Other Property" Loss | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Insuring Agreement 1.E.: "Outside the Premises" Loss | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Insuring Agreement 1.F.: "Computer Fraud" Loss | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Insuring Agreement 1.G.: "Money Orders and Counterfeit Paper Currency" Loss | Coverage Section Not Purchased | Coverage Section Not Purchased |

If "Not Covered" is inserted above opposite any specific Insuring Agreement, such Insuring Agreement in the Crime Coverage Section and any other reference thereto in this policy is hereby deleted.

**CANCELLATION OF PRIOR CRIME INSURANCE:** By acceptance of the Crime Coverage Section of this Policy, you give us notice of cancellation for the prior policy Nos: *016825440* Such cancellation shall be effective at the time the Crime Coverage Section of this Policy becomes effective.

### KRE LIMITS OF INSURANCE \ INSURED PERSON(S)

| Loss Component: | Each Loss Component Limit | Annual Aggregate Limit |
|---|---|---|
| A. Ransom Monies: | Coverage Section Not Purchased | Coverage Section Not Purchased |
| B. In-Transit/Delivery: | Coverage Section Not Purchased | Coverage Section Not Purchased |
| C. Expenses: | Coverage Section Not Purchased | Coverage Section Not Purchased |
| D. Consultant Expenses: | Coverage Section Not Purchased | Coverage Section Not Purchased |
| E. Judgments, Settlements and Defense Costs: | Coverage Section Not Purchased | Coverage Section Not Purchased |
| F. Death or Dismemberment: | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Each Insured Event Limit: | | Coverage Section Not Purchased |
| Coverage Section Aggregate: | | Coverage Section Not Purchased |
| Deductible (Each Loss): | | Coverage Section Not Purchased |

Insured Person(s): *Coverage Section Not Purchased*

### OTHER LIMITS OF LIABILITY

| | |
|---|---|
| (a) POLICY AGGREGATE LIMIT OF LIABILITY (For all coverages combined other than the Crime and the KRE Coverage Sections: | $6,000,000 |
| (b) Crisis Management Fund For D&O: | $25,000 |
| (c) Voluntary Compliance Loss Sublimit of Liability for FLI: | $25,000 |
| (d) HIPAA Penalties Sublimit of Liability for FLI: | $25,000 |

1051392

94106 (2/07)                                       3                          ◊ All rights reserved.

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

ENDORSEMENT# 9

This endorsement, effective 12 01 am     March 23, 2013     forms a part of
policy number   01 828 29 44
issued to ARKANSAS METHODIST HOSPITAL CORP
         D/B/A ARKANSAS METHODIST MEDICAL CENTER

by      National Union Fire Insurance Company of Pittsburgh Pa.

**NOT FOR PROFIT RISK PROTECTOR™ AMENDATORY ENDORSEMENT**
**(D&O, EPL & FLI COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that the
General Terms and Conditions, D&O Coverage Section (if purchased), EPL Coverage
Section (if purchased) and FLI Coverage Section (if purchased) of this policy are amended
as follows.

I.    **AMENDMENTS TO THE GENERAL TERMS AND CONDITIONS**

1     In Clause 2, "DEFINITIONS" of the General Terms and Conditions, Paragraphs
      (a), (r) and (s) are deleted in their entirety and replaced with the following:

      (a)    "Affiliate" shall mean any organization, other than a Subsidiary, which:

             (1)    the Named Organization or any Subsidiary controls or otherwise
                    has the ability to direct the financial or managerial decisions of
                    such entity, whether through the operation of law, contract or
                    agreement, stock ownership or membership, charter, articles of
                    incorporation, or by-law provisions; or

             (2)    is granted by contract the right to control the financial or
                    managerial decisions of the **Named Organization** or any
                    **Subsidiary.**

             provided, however, such coverage as may be provided under this policy
             for any organization described in subparagraphs (1) and (2) above shall
             be limited solely to **Wrongful Acts** occurring in the course of the
             exercise of such control of financial or managerial decisions.

      (r)    "Organization" means: (1) the **Named Organization;** (2) any **Subsidiary**
             thereof; (3) any **Affiliate** thereof listed by endorsement to this policy;
             and (4) the debtor-in-possession (or equivalent status outside the United
             States) in the event a bankruptcy proceeding shall be instituted
             voluntarily by or involuntarily against any of the foregoing entities.

      (s)    "Outside Entity" means:

             (i)    any not-for-profit organization; or

             (ii)   any other organization listed as an "**Outside Entity**" by an
                    endorsement to this policy.

2     Clause 2, "DEFINITIONS" of the General Terms and Conditions is further
      amended to include the following definition at the end thereof:

      NF(a) "Cleanup Costs" means expenses (including but not limited to legal and
            professional fees) incurred in testing for, monitoring, cleaning up,
            removing, containing, treating, neutralizing, detoxifying or assessing the
            effects of **Pollutants.**

⬥ All rights reserved.
*END 009*

98965 (4/08)                           Page 1 of 7

A
I
G

A
T
O
8

3
/
2
0
/
2
0
1
5

**ENDORSEMENT# 9**   (continued)

3    In Clause 4 "EXCLUSIONS" of the General Terms and Conditions, Exclusions (d) and (e) are deleted in their entirety and replaced with the following:

    (d)    for Bodily Injury or Property Damage, provided however, with respect to the FLI Coverage Section only, this exclusion shall not apply to Defense Costs incurred in the defense of a Claim alleging a Breach of Fiduciary Duty,

    (e)    for (i) the actual, alleged or threatened discharge, dispersal, release or escape of Pollutants; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, including, but not limited to, a Claim alleging damage to the Organization or its members, provided however, this exclusion shall not apply to Non Indemnifiable Loss, other than Non Indemnifiable Loss constituting Cleanup Costs,

4.    In Clause 7, "NOTICE/CLAIM REPORTING PROVISIONS" of the General Terms and Conditions, subparagraph 7(1)(a) is deleted in its entirety and replaced with the following:

The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured or any Crisis Management Event (as defined in the D&O Coverage Section) as soon as practicable after the Organization's Risk Manager or General Counsel (or equivalent position) first becomes aware of the Claim; or (ii) the Crisis Management Event commences, but in all events a Claim must be reported no later than either:

    (1)    anytime during the Policy Period or during the Discovery Period (if applicable); or

    (2)    within ninety (90) days after the end of the Policy Period or the Discovery Period (if applicable).

## II.   AMENDMENTS TO THE D&O COVERAGE SECTION

1    In Clause 3, "EXCLUSIONS" of the D&O Coverage Section, Exclusions (a), (c) and (e) are deleted in their entirety and replaced with the following:

    (a)    arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act if any final adjudication establishes that such criminal or deliberate fraudulent act was committed.

    (The **Wrongful Act** of an **Insured** shall not be imputed to any other **Insured** for the purpose of determining the applicability of this exclusion.)

    (c)    which is brought by or on behalf of the **Organization** against any **Individual Insured**; provided, however, this exclusion shall not apply to: (1) any derivative **Claim** made on behalf of the **Organization** by a member, an attorney general or any other such representative party if such action is brought and maintained independently of and without the solicitation of or assistance of, or active participation of or intervention of any **Individual Insured** or the **Organization** or any **Affiliate** thereof; or (2) in any bankruptcy proceeding by or against an **Organization**, to any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Organization**;

◊ All rights reserved.
**END 009**

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

ENDORSEMENT# 9        (continued)

(c)   alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of an Insured under any express contract or agreement; provided, however, that this exclusion shall not apply to

    (i)   to the extent that any liability does not arise from such express contract or agreement; or

    (ii)  Loss constituting Defense Costs of Individual Insureds.

2.   Clause 5, "DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)" of the D&O Coverage Section is deleted in its entirety and replaced with the following:

5.   **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING ADVANCEMENT OF DEFENSE COSTS)**

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Organization on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of the General Terms and Conditions. This right shall terminate if not exercised within thirty (30) days of the date the Claim is first made against an Insured. Further, from the date the Claim is first made against an Insured to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of any Insured or the Insurer with respect to such Claim. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. The assumption of the defense of the Claim shall be effective upon written confirmation sent thereof by the Insurer to the Named Organization. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense and the negotiation of any settlement of any Claim, subject to the provisions of this Clause 5; provided, however, the Insurer shall not be obligated to defend such Claim after the Policy Aggregate Limit of Liability or any applicable Separate Limit of Liability or Shared Limit of Liability have been exhausted.

When the Insurer has not assumed the defense of a Claim pursuant to this Clause 5, the Insurer nevertheless shall advance, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by each and every Insured or the Organization, severally according to their respective interests, in the event and to the extent that any such Insured or the Organization shall not be entitled under the terms and conditions of this D&O Coverage Section to payment of such Loss.

The Insurer shall have the right to fully and effectively associate with each and every Insured in the defense of any Claim that appears reasonably likely to involve the Insurer, including, but not limited to, negotiating a settlement. Each and every Insured agrees to provide such information as the Insurer may reasonably require and to give the

© All rights reserved.
**END 009**

A I G A T 0 8 3 / 2 0 / 2 0 1 5

Insurer full cooperation, including

(a) cooperating with and helping the **Insurer**

(i) in making settlements, subject to subparagraph 5(b) below,

(ii) in enforcing any legal rights the **Insured** may have against anyone who may be liable to the **Insured**;

(iii) by attending depositions, hearings and trials; and

(iv) by securing and giving evidence, and obtaining the attendance of witnesses, and

(b) taking such actions which, in such **Insured's** judgment, are deemed necessary and practicable to prevent or limit **Loss** arising from any **Wrongful Act**

Additionally, the **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer** If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim** Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this D&O Coverage Section. The **Insurer** shall not unreasonably withhold any consent required under this D&O Coverage Section, provided that the **Insurer**, when it has not assumed the defense of a **Claim** pursuant to this Clause 5, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Loss** is not covered under the terms of this D&O Coverage Section. In addition, the **Insured** shall not take any action, without the **Insurer's** written consent, which prejudices the **Insurer's** rights under this D&O Coverage Section.

This Clause 5 shall not be applicable to **Crisis Management Loss** Nevertheless, the **Insurer** does not, under this policy, assume any duty to defend.

III. **AMENDMENTS TO THE EPL COVERAGE SECTION**

1. In Clause 2. "DEFINITIONS" of the EPL Coverage Section, Paragraphs (a) and (c) are deleted in their entirely and replaced with the following·

(a) "**Claim**" means:

(i) a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations);

(ii) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

(1) service of a complaint or similar pleading;

(2) return of an indictment, information or similar document (in the case of a criminal proceeding); or

(3) receipt or filing of a notice of charges; or

© All rights reserved.
*END 009*

**ENDORSEMENT# 9** (continued)

    (iii)   an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") or Office of Federal Contract Compliance Program ("OFCCP"), or similar state, local or foreign agency, which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured.

However, in no event shall the term "Claim" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

    (c)   "Employment Practices Violation" means any actual or alleged

        (1)   wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

        (2)   harassment (including sexual harassment, whether "quid pro quo", hostile work environment or otherwise);

        (3)   discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

        (4)   Retaliation;

        (5)   employment related misrepresentation(s) to an Employee or applicant for employment with the Organization;

        (6)   employment-related libel, slander, humiliation, defamation or invasion of privacy;

        (7)   wrongful failure to employ or promote;

        (8)   wrongful deprivation of career opportunity with the Organization, wrongful demotion or negligent Employee evaluation, including the giving of negative or defamatory statements in connection with an Employee reference;

        (9)   wrongful discipline;

       (10)   failure to grant tenure or practice privileges;

       (11)   failure to provide or enforce adequate or consistent Organization policies or procedures relating to any Employment Practices Violation;

       (12)   with respect to any of the foregoing items (1) through (11) of this definition; negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

but only if the Employment Practices Violation relates to an Individual Insured, or applicant for employment with the Organization or an Outside Entity, whether committed directly, indirectly, intentionally or unintentionally.

2.   In Clause 3, "EXCLUSIONS" of the EPL Coverage Section, Exclusion (b) is deleted in its entirety and replaced with the following:

◊ All rights reserved.
**END 009**

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

ENDORSEMENT # 9   (continued)

(b) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of an Insured under any express contract or agreement, provided, however, that this exclusion shall not apply to (1) liability which would have attached in the absence of such express contract or agreement; or (2) Loss constituting Defense Costs.

3. In Clause 4, "DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)" of the EPL Coverage Section the last paragraph is deleted in its entirety and replaced with the following:

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed above, then, subject to the Policy Aggregate Limit of Liability and Separate Limit of Liability or Shared Limit of Liability, if any, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer ("Settlement Opportunity Amount"), plus (2) 70% of covered Loss, in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 30% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Organization and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the applicable Retention amount stated in Item 3 of the Declarations.

## IV. AMENDMENTS TO THE FLI COVERAGE SECTION

1. In Clause 2, "DEFENSE AGREEMENTS" of the FLI Coverage Section, paragraph (c), "GENERAL PROVISIONS" is deleted in its entirety and replaced with the following:

   (c) **GENERAL PROVISIONS** (applicable to 2(a) and 2(b) above)

   The Insurer shall advance Defense Costs prior to the final disposition of a Claim, subject to the other provisions of this policy. Such advance payments by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss under the terms of this FLI Coverage Section.

   The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to in writing by the Insurer shall be recoverable as Loss under the terms of this FLI Coverage Section.

   The Insureds shall give the Insurer full cooperation and such information as the Insurer may reasonably require

   Selection of counsel to defend the Claim made against the Insureds shall be governed by Clause 6 of this FLI Coverage Section (if applicable).

2. In Clause 4, "EXCLUSIONS" of the FLI Coverage Section, paragraph (c) is deleted in its entirety and replaced with the following:

◊ All rights reserved.
**END 009**

98965 (4/08)                                        Page 6 of 7

ENDORSEMENT# 9      (continued)

(c)   for failure to fund a Plan in accordance with Employee Benefit Law or
the Plan instrument or the failure to collect contributions owed to the
Plan, provided, however, this exclusion shall not apply to (1) Defense
Costs, or (2) the portion of Loss that is payable as a personal obligation
of an Individual Insured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED

Robert M Vellen

AUTHORIZED REPRESENTATIVE

◊ All rights reserved.
*END 009*

98965 (4/08)          Page 7 of 7



AIG Claims, Inc.
Financial Lines Claims.
175 Water Street
New York, NY 10038
www.aig.com

Keri Nekola
Claims Analyst
Employment Practices.

T 212 458 1176
F 866 784 1332
Keri.Nekola@aig.com

Correspondence Address:
AIG Property Casualty
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

eMail new notices to
c-Claim@aig.com

Fax new notices to
866 227 1750

Thursday, December 19, 2013

Via Email (kevin.thielemier@arkansasmethodist.org)

Mr. Kevin Thielemier
Director of Human Resources

**Insured: Arkansas Methodist Medical Center**
**Matter: James Elbaor**
**Claim #: 550-132802**
**Policy #: 01-828-29-44**

**Not-For-Profit Risk Protector Policy**

Dear Ms. Thielemier,

I am the adjustor handling this matter and all future correspondence should be directed to my attention. The purpose of this letter is to: 1) investigate and evaluate this matter for coverage and 2) advise you of certain policy provisions which may affect the availability of coverage pursuant to the terms and conditions of this policy

AIG Claims, Inc. is the claims administrator handling claims arising under insurance policy No. 01-828-29-44 issued to Arkansas Methodist Hospital Corp d/b/a Arkansas Methodist Medical Center ("Insured") by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union")

We would like you to know that we appreciate you as a customer and appreciate your business; however, we must inform you that there is no coverage under the policy captioned above for the matters submitted, as more fully discussed below. After you have received the letter, if there is additional information you would like me to consider, please forward such information to me. Also, if you have any questions about the letter, please feel free to contact me.

In considering your request for coverage, we have reviewed the insurance policy referenced above, as well as the allegations asserted. If you assert a right to coverage under another policy issued by any other member-company of AIG Claims, Inc., please submit notice pursuant to the notice provisions contained in that policy.

**Exhibit B**

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5



### The Policy

National Union issued a Not for Profit Risk Policy, Policy No. 01 828 29 44, effective from March 23, 2013 to March 23, 2014. The coverage provided is subject to an aggregate limit of liability of Eight Million Dollars ($8,000,000) and a separate Limit of Liability of Two Million Dollar. ($2,000,000) for all Loss for Employment Practices Liability ("EPL") Claims. This claim is subject to a self insured retention amount of Seventy Five Thousand Dollars ($75,000) for Loss arising from EPL Claims alleging the same Wrongful Act or Related Wrongful Acts. Please refer to the policy for its complete terms and conditions. The Policy requires that any applicable self-insured retention or deductible and/or applicable primary and/or underlying insurance be exhausted before any defense and/or indemnity obligation exists. Relevant policy provisions are referenced below.

### Summary of the Matter

Based on the information we have received to date, the following sets forth a summary of the allegations. We stress that our analysis does not imply any validity to the underlying allegations.

We are in receipt of the Charge of Discrimination filed on August 13, 2012 by James Elbaor ("Claimant") to Arkansas Methodist Medical Center ("Respondent") with the Equal Employment Opportunity Commission ("EEOC"). Claimant is alleging discrimination based on age. On May 8, 2013, the EEOC issued a Right-to-Sue notice.

We are further in receipt of the Complaint filed on August 5, 2013 by James Elbaor ("Plaintiff") against Arkansas Methodist Hospital Corporation d/b/a Arkansas Methodist Medical Center ("Defendant") in the United States District Court for the Eastern District of Arkansas.

According to the Complaint, Plaintiff, 69 years of age alleges he applied for an Orthopedic Surgeon position and was denied employment because of his age. Plaintiff contends that the President sent an email to another employee asserting that he was too old for the position. Plaintiff believes he would have been hired for the position if he was in his fifty's and asserts the decision not to hire him was pre-text.

The sole cause of action alleged is violation of the Age Discrimination in Employment Act. Plaintiff is seeking to be placed in a position or front pay, back pay, compensatory damages, punitive damages, liquidated damages, pre and post judgment interest and attorneys' fees and costs.

### Coverage Evaluation

The EEOC charge satisfies the definition of Claim as provided by Section 2(a) of the EPL Coverage Section of the Policy, as amended by Endorsement No. 9.

National Union would like to direct your attention to the Insuring Agreement of the EPL Coverage Section of the Policy, which states:



This policy shall pay the Loss of each and every Insured arising from a Claim first made against such Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any Wrongful Act. The Insurer shall, in accordance with and subject to Clause 4 of this Coverage Section advance Defense Costs of such Claim prior to its final disposition.

Furthermore, National Union directs your attention to Section 7(a) of the General Terms and Conditions of the Policy, as amended by Endorsement No. 9, which states:

The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured or any Crisis Management Event (as defined in the D&O Coverage Section) as soon as practicable after the Organization's Risk Manager or General Counsel (or equivalent position) first becomes aware of the Claim, or (ii) the Crisis Management Event commences, but in all events a claim must be reported no later than either:

(1) anytime during the Policy Period or during the Discovery Period (if applicable); or

(2) within ninety (90) days after the end of the Policy Period or the Discovery Period for such Policy Year (if applicable).

This Policy only provides coverage for Loss arising from those Claims that were first made against the Insured during the Policy Period and reported to National Union, pursuant to the terms and conditions of that policy. Since the Claim was first made in August, 2012, there would be no coverage for the James Elbnor matter because the Claim was made prior to the inception date of the March 31, 2013-2014 policy period.

Given our position as outlined above, we have not addressed certain other provisions of the policy which may also limit and/or preclude coverage for this Claim.

National Union's preliminary coverage position is based on the information presently available to us. This letter is not, and should not be construed as, a waiver of any terms, conditions, exclusions or other provisions of the Policy, or any other policies of insurance issued by National Union or any of its affiliates. National Union expressly reserves all of its rights under the Policy, at law or in equity, including the right to assert additional defenses to any claims for coverage, if subsequent information indicates that such action is warranted.

Should you have any additional information that you feel would either cause us to review our position or would assist us in our investigation or determination, we ask that you advise us as soon as possible.

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5



If you have any other insurance policies which may respond to this claim asserted, you should report this matter to the issuing carrier(s) immediately.

In closing, allow me to reiterate that we value you as a customer and encourage you to contact us should you have any questions or concerns regarding the contents of this letter. Thank you for your cooperation in this matter.

Very truly yours,

Keri Nekola
Claims Analyst
Employment Practices Liability

cc.     (via email, ccavill@adg.aig.com)

A
I
G

A
T
0
8
3
/
2
0
/
2
0
1
5

## THE HEALTH LAW FIRM

2800 Cantrell Road, Suite 200
Little Rock, Arkansas 72202

Harold H. Simpson
Karey W. Gardner
Gabriel D. Mallard

thealthgroutothealthlawfirms.com
kwgardner@thehealthlawfirm.com
gdmallard@thehealthlawfirm.com

Internet: www.thehealthlawfirm.com
Telephone: (501) 221-7100
Telefax: (501) 221-0287

August 6, 2014

Ms. Keri Nekola
Claims Analyst
Employment Practices Liability
AIG Property Casualty
Financial Lines Claims
P. O. Box 25947
Shawnee Mission, KS 66225

RE: Claim #: 550-132802
    Policy #: 01-828-29-44

Dear Ms. Nekola:

I am writing on behalf of Arkansas Methodist Medical Center ("Insured") in response to your December 19, 2013 letter of denial ("Letter") under the above-referenced policy. It appears from your letter that AIG has denied coverage on the basis that the Claim was first made outside the applicable policy period of March 31, 2013-2014 ("Policy Period").

Your letter notes "this Policy only provides coverage for Loss arising from those Claims that were first made against the Insured during the Policy Period...." Further, you state that the Claim was first made in August 2012, therefore there would be no coverage for the James Elbaor matter because the Claim was made prior to the inception date of the March 31, 2013-2014 policy period. Such analysis is factually inaccurate.

The language in the Notices section of the "Not-For-Profit Risk Protector" provides that the policy is "generally limited to loss from claims first made against insureds during the policy period." Notice to the Insurer of the Claim for which the Insured has requested coverage was provided within the Policy Period in question as acknowledged in the Letter.

**Exhibit C**

A
I
G

A
T
0
8

3
/
2
0
/
2
0
1
5

Ms. Keri Nekola
Page 2
August 6, 2014

Under the Policy, "Claim" is defined as follows:

> (1) a written demand for monetary relief or non-monetary relief (including any request to toll or waive any statute of limitations); or

> (2)   a civil, administrative, regulatory or arbitration proceeding for monetary relief or non-monetary relief which is commenced by:
>    (1)   service of a complaint or similar pleading; or
>    (ii)   receipt or filing of notice of charges.

> The term **Claim** shall include an Equal Employment Opportunity Commission ("EEOC")  or Office of Federal Contract Compliance Program ("OFCC") (or similar federal, state or local agency) proceeding or investigation commended by the filing of a notice of charges, services of a complaint or similar document of which notice has been given to the Insured.

Pursuant to the Policy's own definition, an EEOC Charge and a Complaint are separate claims. As separate claims, each has its own notice requirement. Regardless of the EEOC claim, the Insured had an obligation to provide notice of the filing of the Complaint, which it did thus triggering the Insurers' requirement to provide coverage.

Clause 7 of Endorsement #9 sets out the Notice/Claim Reporting Provisions which requires that as a condition precedent to the obligations of the Insurer, the Insured shall "give written notice to the Insurer of any Claim made against an Insured...." There should be no dispute that, in general terms, the obligations of the Insurer is to pay the loss associated from a claim made against the Insured during the policy period or discovery period and reported pursuant to the terms of the Policy.

A "condition precedent" as it relates to a contract is an event which must take place before a party to a contract must perform or do their part. Therefore, if the Insured does not wish to invoke the obligations of the Insurer, it would not provide Notice.

Based on the provided analysis set forth in your letter, any Notice of the EEOC Charge would have been during a different policy period and would not have been sufficient for purposes of the separate Claim- triggered by the filing of the Complaint - and Policy Period in question.

The filing of the Complaint is an intervening event which carries with it, its own Notice requirements, which were complied with by the Insured, thus invoking the Insurer's obligations for coverage of losses associated with the Complaint - the only Claim for which Insured is requesting coverage. The Insured has made no claim for any losses associated with the EEOC Charge which, according to the Policy definition is a separate Claim and, according to your analysis, fell under a separate policy period.

Ms. Keri Nekola
Page 3
August 6, 2014

Therefore, we are again requesting coverage under the above referenced Policy for any and
all losses associated with the Complaint filed on August 5, 2013. All future correspondence
in this matter should be directed to my attention. I look forward to a timely resolution of
this matter without requiring judicial intervention.

Sincerely,

THE HEALTH LAW FIRM

Karey W. Gardner

Karey W. Gardner

cc:    Mr. Barry Davis, Chief Executive Officer
       Arkansas Methodist Medical Center

A
I
G
A
T
0
8
3
/
2
0
/
2
0
1
5

# CHARTIS

### National Union Fire Insurance Company of Pittsburgh, Pa.®
A capital stock company

## Not-For-Profit Risk Protector™

**Management Liability, Professional Liability, Crime Coverage and Kidnap And Ransom/Extortion Coverage for Not-For-Profit Organizations**

POLICY NUMBER: *01 828 29 44*     REPLACEMENT OF POLICY NUMBER  *01 682 54 40*

### NOTICES

[APPLICABLE TO ALL COVERAGE SECTIONS OTHER THAN THE CRIME COVERAGE SECTION AND KIDNAP AND RANSOM/EXTORTION COVERAGE SECTION]

COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD AND REPORTED TO THE INSURER AS THE POLICY REQUIRES. DEFENSE COSTS REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE, AMOUNTS AVAILABLE TO RESPOND TO SETTLEMENTS AND JUDGMENTS) AND ARE APPLIED AGAINST APPLICABLE RETENTIONS.

THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION. WHERE THE INSURER HAS NO DUTY TO DEFEND, IT WILL ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS OF THIS POLICY PRIOR TO THE FINAL DISPOSITION OF A CLAIM. PLEASE REFER TO THE COVERAGE SECTIONS PURCHASED FOR DEFENSE RELATED DETAILS.

PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

## DECLARATIONS

| ITEMS | | |
|---|---|---|
| **NAMED ORGANIZATION:** | (the "Named Organization") | ARKANSAS METHODIST HOSPITAL CORP. D/B/A ARKANSAS METHODIST MEDICAL CENTER |
| | MAILING ADDRESS: | 900 W KINGSHIGHWAY P.O. BOX 339 PARAGOULD, AR 72450-5942 |
| | STATE OF INCORPORATION/FORMATION: | Arkansas |
| **POLICY PERIOD:** | Inception Date: *March 23, 2013* | Expiration Date: *March 23, 2014* |
| | 12:01 A.M. at the address stated in Item 1. | |

*1051392*

    ◊ All rights reserved.

**Exhibit D**

A
I
G

A
T
O
8

3
/
2
0
/
2
0
1
5

## ITEMS (continued)

### COVERAGE SUMMARY

| Liability Coverage Section | | Separate Limit of Liability | Shared Limit of Liability | Retention/ Deductible* | Continuity Date | Premium |
|---|---|---|---|---|---|---|
| D&O | D&O and Not For Profit Organization | $2,000,000 | Inapplicable | Crisis Management Event. $2,500 All Other Claims $25,000 | 03/23/1993 | $4,761 |
| EPL | Employment Practices | $2,000,000 | Inapplicable | All Claims $75,000 | 03/23/1997 | $10,019 |
| FLI | Fiduciary | $2,000,000 | Inapplicable | All Claims $10,000 | 03/23/1993 | $2,294 |
| CCP | Employed Lawyers | Coverage Section Not Purchased | Coverage Section Not Purchased | All Claims Coverage Section Not Purchased | Coverage Section Not Purchased | Coverage Section Not Purchased |
| Crime | Crime | See Section 5 | None | See Section 5 | N/A | Coverage Section Not Purchased |
| KRE | Kidnap And Ransom/ Extortion | See Section 6 | None | See Section 6 | N/A | Coverage Section Not Purchased |

*With respect to the D&O, EPL, FLI and CCP Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss    N/A
*No Retention is applicable to Voluntary Compliance Loss and HIPAA Penalties

**TOTAL PREMIUM**
$17,074

Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $85 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows:  85% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.
     A copy of the TRIA disclosure sent with the original quote is attached hereto.

1051392

94106 (2/07)                                    2                          © All rights reserved.



SCOTT PEGRAM
212-458-6373
AIG PROPERTY CASUALTY
175 WATER STREET
NEW YORK NY 10038

**2 LBS**   **PAK**   **1 OF 1**

**SHIP TO:**
  LEGAL CLAIMS - DMC
  AIG CLAIMS DEPARTMENT
  FLOOR 1
  3650 BROOKSIDE PARKWAY
  **ALPHARETTA  GA 30022-1423**

**GA 301 9-01**

**UPS NEXT DAY AIR**   **1**
TRACKING #: 1Z 6AW 980 01 9161 2829

BILLING: P/P

Reference 1: 1279-0000-0418

CS 17.1.04:   WNTIE70 60.0A 01/2015

171604 REV. 2/10 LPS

https://www.campusship.ups.com/cship/create?ActionOriginPair=default ___ PrintWindow.... 3/19/2015

This Express Pak is for use with the following services:

IIPC Nove

Extremely Urgent

all 1-800-PICK-UPS® (1-800-7

15% Post-Consumer Content

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the International Carriage by Air (the "Warsaw Convention") and/or the Convention on the Contract for the International Carriage of software were exported from the U.S. in accordance with the Export Administration

AIG
AT08
3/20/2015